IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Patrick L. Booker, #297590, | C/A No. 2:15-cv-01189-MGL-MGB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Lucius Miles and Richard Hayes, Sr., | **OF MAGISTRATE JUDGE** |
| Defendants. | |

This matter is before the Court on the Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 24.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1), and Local Civil Rule 73.02(B)(2)(e), D.S.C., all pretrial matters involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

For the reasons set forth herein, the undersigned recommends denying Defendants' Motion for Summary Judgment (Dkt. No. 24).

## BACKGROUND

Plaintiff is a state prisoner currently housed within the South Carolina Department of Corrections ("SCDC") at Perry Correctional Institution, but the instant action concerns events that allegedly occurred on May 21, 2012, shortly after Plaintiff was transferred from Broad River Correctional Institution to Evans Correctional Institution ("ECI"). (*See* Dkt. No. 1; Dkt. No. 45.) Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 and South Carolina law. (Dkt. No. 1 at 8.) When Plaintiff arrived at ECI, he claims that he told Defendant Miles that he "had protective concerns"[1] and that he "requested to be provided protective custody until those concerns were

---

[1] Plaintiff alleges that he was concerned for his safety because he had recently been stabbed and threatened by other inmates. (*See* Dkt. No. 1 at 2.)

1

adequately addressed." (*Id*. at 2.) Plaintiff claims that Defendant Miles responded to his concerns by stating, "I don't give a damn about your protective concerns!" (*Id*.) Plaintiff alleges that Defendant Miles ordered him to proceed to his assigned housing unit, but Plaintiff refused to comply because he "was in fear for [his] life and safety in the general inmate population." (*Id*.)

After Plaintiff refused to go to his assigned housing unit, Plaintiff states that Defendant Miles threatened to spray him with pepper spray unless Plaintiff complied with Defendant Miles' request. (*Id*. at 3.) Plaintiff alleges that he responded to Defendant Miles' threat by stating, "Sir, I fear for my life in population. I cannot go." (*Id*.) Plaintiff claims that "an SCDC employee named Captain Edge appeared and [Plaintiff]" attempted to explain his situation to Captain Edge. (*Id*.) Plaintiff claims that "Captain Edge merely walked away while Lt. Miles and a Sergeant named Hayes prepared to use force against [Plaintiff]."[2] (*Id*.)

Plaintiff alleges that he held his hands in the air and refused to comply with Defendant Miles' order to report to his assigned housing unit. (*Id*.) After Plaintiff refused to comply with Defendant Miles' order, Plaintiff claims that Defendant Miles "discharged a very long burst of chemical munitions upon [Plaintiff's] facial area." (Dkt. No. 29-2 at 4.) Plaintiff states that he was "forcefully body-slammed . . . to the floor" and handcuffed by Defendant Hayes after Defendant Miles sprayed Plaintiff with pepper spray. (*Id*.) Plaintiff alleges that Defendant Miles sprayed him in the face with pepper spray after he was placed in handcuffs, and he further alleges that both Defendants "began to kick [him] with their feet and strike [him] with their fists" after he was placed in handcuffs. (*Id*.)

---

[2] Plaintiff consistently claims that Defendant Hayes was involved in the alleged incident, but the Defendants claim that "[i]t is extremely unlikely that Defendant Hayes was involved in the incident at issue in this case." (Dkt. No. 24-1 at 8 of 21.) Of course, in ruling on a Motion for Summary Judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *The News & Observer Pub'l Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

Plaintiff states that both Defendants picked him up, carried him outside, and slammed him to the ground. (Dkt. No. 1 at 4.) Plaintiff claims that he was bleeding from his nose and lips when he was on the ground outside. (*Id*.) Once Plaintiff was on the ground, he claims that he was seen by "a medical technician named Ms. Graves" who "placed a device on [Plaintiff's] right index finger." (*Id*.) Plaintiff alleges that Ms. Graves commented on his heart rate, but "[s]he did not assess [his] injuries and she did not attempt to question [him] about [his] injuries." (*Id*.)

After Ms. Graves examined the Plaintiff, he alleges that he was "picked-up again and thrown down into a large laundry cart." (*Id*. at 5.) Plaintiff states that both Defendants threw all of his "personal and state-issued property" in the laundry cart on top of Plaintiff. (*Id*.) Plaintiff claims that Defendant Hayes "placed [Plaintiff's] mattress on top of the laundry cart," which "sealed off and prevented any air from entering the cart." (*Id*.) Plaintiff alleges that Officer Benjamin Stubbs tried to move the mattress, but Defendant Hayes allegedly said "Man, fuck that sonovabitch, don't let his ass get no air! He should've took his ass to his dorm in the first place!" (*Id*. at 6.) Plaintiff claims that the mattress was then placed back on top of the laundry cart. (*Id*.)

Plaintiff alleges that the Defendants struck his shoulder three times when they "shoved the laundry cart through the threshold doorway of Evans' Waxhaw housing unit." (*Id*.) After arriving at the housing unit, Plaintiff alleges that he was removed from the laundry cart, carried to his assigned cell, and "left lying on the cell floor inside the cell with another inmate." (*Id*.) Plaintiff claims that the inmate in the cell with him "requested the dorm/wing officer (Mr. Cadewell) to allow [Plaintiff] to take a shower in order to decontaminate the tear gas/mace but the officer refused." (*Id*. at 7.) Plaintiff claims that he "was never afforded medical attention for

3

[his] injuries . . . until weeks later."[3] (*Id.*) Plaintiff claims that he filed an administrative complaint after the alleged incident but was never interviewed by SCDC officials. (*Id.*)

Plaintiff commenced this action on or about March 6, 2015. (Dkt. No. 1.) In his Verified Complaint, Plaintiff raises two causes of action: excessive force in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983, and "assault and/or battery" pursuant to South Carolina law. (Dkt. No. 1 at 8.) Plaintiff requests the following relief: (1) a declaratory judgment stating that the Defendants' actions constitute a violation of Plaintiff's Eighth Amendment rights and that the Defendants' actions constitute "assault and/or batter [sic] under South Carolina law"; (2) compensatory damages; (3) punitive damages; (4) nominal damages; and (5) "[r]eferral of this complaint to the Federal Bureau of Investigations [sic] ('FBI') pursuant to 18 U.S.C. § 4." (*Id.* at 9.)

The Defendants moved for summary judgment on September 9, 2015. (Dkt. No. 24.) By order filed September 10, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 25.) Plaintiff filed a Response in Opposition to the Defendants' Motion for Summary Judgment on or about October 16, 2015. (Dkt. No. 28.) Plaintiff filed a Second Response in Opposition to the Defendants' Motion for Summary Judgment on or about October 19, 2015. (Dkt. No. 29.) The Defendants filed two Replies. (Dkt. No. 32; Dkt. No. 42.) Plaintiff filed a Supplemental Affidavit on or about May 26, 2016. (Dkt. No. 46.)

## APPLICABLE LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that

---

[3] The case *sub judice* does not concern Plaintiff's medical treatment.

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

**Excessive Force Claim**

The Plaintiff's first claim alleges, pursuant to 42 U.S.C. § 1983, that Defendants violated his Eighth Amendment right to be free from "cruel and unusual punishments" by using excessive force against him. *See* U.S. CONST. amend. VIII. In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983).

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The use of mace or tear gas on inmates while they are in their cell is not *per se* unconstitutional. *Id.* at 763. However, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of

5

tear gas in the prison environment." *Id*. (quoting *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984)).

A plaintiff must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)" to establish an excessive force claim. *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, a plaintiff must prove that a defendant's use of force was done "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). "[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Iko*, 535 F.3d at 239). The Fourth Circuit has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Parker*, 625 F. App'x at 198 (quoting *Iko*, 535 F.3d at 239); *see also Whitley*, 475 U.S. at 321 (identifying the four factors as (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates[] as reasonably perceived by the responsible officials on the basis of the facts known to them").

6

To establish the objective component, the Plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Id.* at 9; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The undersigned finds that there are no genuine disputes of material fact with regard to the events leading up to—and including— Defendant Miles' initial discharge of pepper spray to subdue Plaintiff.[4] There is, however, a genuine dispute of material fact as to whether the Defendants' actions *after* Plaintiff was initially sprayed with pepper spray constitute cruel and unusual punishment under the Eighth Amendment.

The Plaintiff alleges that he "became docile and . . . complied with all directives after Defendant Miles discharged the first burst of chemical munitions upon" him. (Dkt. No. 29-2 at 4.)  The Plaintiff then claims that "Defendants Miles and Hayes body-slammed [Plaintiff] to the floor and arbitrarily placed handcuffs upon [Plaintiff's] wrists afterwhich [sic] Defendant Miles sprayed [Plaintiff] again and began beating and kicking [Plaintiff] along with Defendant Hayes while [Plaintiff] was docile and secured in restraints." (*Id.* at 4-5.) Plaintiff alleges that he was then "picked-up again and thrown down into a large laundry cart" and the Defendants threw "all of [Plaintiff's] personal and state-issued property" on top of Plaintiff in the laundry cart. (Dkt. No. 1 at 5.) After Plaintiff was in the laundry cart with all of his property, Plaintiff claims that

---

[4] The undersigned notes that the parties dispute whether Defendant Hayes was present. Such a dispute is not a material one with respect to the events leading up to and including Defendant Miles' initial discharge of pepper spray. Given that Plaintiff pleaded guilty to the charge of "Refusing or Failing to Obey" during a disciplinary hearing regarding the events of May 21, 2012, there is no genuine issue of material fact as to the necessity of the Defendants' initial use of force in handcuffing the Plaintiff. (Dkt. No. 24-5 at 1; *see also* Dkt. No. 46-1 at 3 of 13 (authorizing staff members to use reasonable force to restrain an inmate when the inmate "refuses to obey a lawful order")).

7

Defendant Hayes "placed [Plaintiff's] mattress on top of the laundry cart, . . . seal[ing] off and prevent[ing] any air from entering the cart." (*Id*.) Plaintiff further alleges that another correctional officer attempted to move the mattress to allow Plaintiff to receive more air, but Defendant Hayes placed the mattress back over the cart and said, "Man, fuck that sonovabitch, don't let his ass get no air! He should've took his ass to his dorm in the first place!" (*Id*. at 6.) Plaintiff also claims that "the officers recklessly shoved the laundry cart through the threshold doorway of Evans' Waxhaw housing unit," striking Plaintiff's shoulder three times. (*Id*.) Finally, Plaintiff claims that the "[he] was grabbed and lifted out of the cart, carried to [his] assigned cell and left lying on the cell floor."[5] (*Id*.)

The Defendants, assuming that Defendant Hayes was involved in the alleged incident,[6] deny that Defendant Miles sprayed Plaintiff "with chemical munitions a second time after Plaintiff was placed in restraints[]," and they deny that Plaintiff was "'body-slammed,' kicked, or punched by any correctional officers during the May 21, 2012 incident." (Dkt. No. 42 at 5; *see also* Dkt. No. 42-1.) The Defendants admit that "Plaintiff was placed in a rolling laundry cart because Plaintiff refused to walk to his cell[]," but they claim that "[n]either Plaintiff's belongings nor a mattress were thrown on top of Plaintiff, and Plaintiff did not strike his shoulder while being transported." (Dkt. No. 42 at 5; *see also* Dkt. No. 42-1.) The Defendants also observe that "Plaintiff has no objective evidence to support his allegations regarding the use of force beyond a single application of chemical munitions, the use of restraints, and the transportation of Plaintiff by rolling cart to his cell." (Dkt. No. 42 at 8.) The Defendants argue

---

[5] Plaintiff also claims that another officer refused to allow Plaintiff to shower and decontaminate. (Dkt. No. 1 at 7.) The undersigned will not address this allegation because the officer who allegedly refused to allow Plaintiff to shower and decontaminate is not a party to this suit.
[6] The undersigned assumes, for purposes of the instant motion, that Defendant Hayes was involved in the alleged incident. *See The News & Observer Pub'l Co.*, 597 F.3d at 576.

8

that "[a] plaintiff's uncorroborated and self-serving testimony is insufficient to create an issue of fact to defeat a motion for summary judgment." (*Id.* at 6.)

While it is true that Plaintiff offers no objective evidence in support of his excessive force claims, Plaintiff has submitted a Verified Complaint (Dkt. No. 1) and multiple sworn affidavits (Dkt. No. 29-2 and Dkt. No. 46.) The undersigned finds that it would be inappropriate to grant summary judgment when Plaintiff's internally consistent affidavits present a version of events that is drastically different from the one alleged by the Defendants. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995) ("[N]either Pittman's nor Cook's affidavits differ from any other testimony that they gave previously, and their affidavits clearly conflict with the affidavits submitted by American and the Trustee. In this context, the district court should not have disregarded the affidavits."); *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) ("It is not our job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe." (citing *Liberty Lobby*, 477 U.S. at 249)); *Barrineau v. United States*, Crim. No. 2:06-CR-00733-DCN, 2010 WL 2195460, at *2 (D.S.C. June 1, 2010) ("Because there are conflicting affidavits before the court, summary judgment is not appropriate.").

The Defendants' memorandum in support of their motion argues that Plaintiff cannot maintain a claim for monetary relief against the Defendants in their individual capacities because the Defendants are entitled to qualified immunity. (Dkt. No. 24-1 at 4.) "'Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly

9

established statutory or constitutional rights of which a reasonable person would have known.'" *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (quoting *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001)). "Qualified immunity protects . . . officers from liability for 'bad guesses in gray areas'" and bases liability on the violation of bright-line rules. *Id*. (quoting *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011)). To determine whether a defendant is entitled to qualified immunity, the court must examine whether the defendant violated the plaintiff's constitutional or statutory rights and, if so, whether the defendant's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Id*. (citations omitted). As stated *supra*, the Plaintiff's allegations regarding the Defendants' use of force establish a genuine issue of material fact as to whether his Eighth Amendment rights were violated. Therefore, the court must determine whether the Defendants' "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Id*.

"[I]n deciding whether the right was clearly established, [the court] must determine whether an official in the defendant's position knew or reasonably should have known that the action he took violated the constitutional rights of the plaintiff." *Id*. at 322 (citing *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999)). In this case, the Plaintiff's allegations are that the Defendants "body-slammed" him, attacked him while he was restrained, tossed him in a laundry cart, piled eighty pounds of property on top of him in the laundry cart, placed a mattress on top of the laundry cart to restrict Plaintiff's ability to breathe, and rammed Plaintiff's shoulder into a doorframe while in the laundry cart. These actions are clearly beyond the scope of reasonable conduct for an officer in the Defendants' positions. According to the Plaintiff's allegations, these actions were unnecessary because he "became docile and . . . complied with all directives after Defendant Miles discharged the first burst of chemical munitions upon" him." (Dkt. No. 29-

10

2 at 4.) Plaintiff alleges that these actions were "done maliciously and/or sadistically for the very purpose of causing [Plaintiff] harm," and Plaintiff denies that these actions were taken "to maintain or restore discipline." (*Id.* at 6.) Taking the evidence in the light most favorable to Plaintiff, Defendants are not entitled to qualified immunity. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) ("Qualified immunity does not . . . override the ordinary rules applicable to summary judgment proceedings. Thus, while the purely legal question of whether the constitutional right at issue was clearly established is always capable of decision at the summary judgment stage, a genuine question of material fact regarding [w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial." (internal quotation marks and citations omitted)); *see also West v. Byars*, Civ. A. No. 5:13-cv-01849-DCN, 2015 WL 1520331, at *6 (D.S.C. Mar. 30, 2015) (concluding certain defendants were not entitled to qualified immunity where, "at the time of the defendants' alleged actions, it was clearly established that unnecessarily beating a prisoner violates the Eighth Amendment, even if he is not seriously injured").

The Defendants' memorandum in support of their motion also argues that the Defendants are "state officials acting in their official capacities" thus they "are not 'persons' under § 1983, and any allegations interpreted to fall under § 1983 are fatally deficient." (Dkt. No. 24-1 at 4.) The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989). As the Supreme Court stated in *Will*,

11

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Id*. at 66 (citation omitted). Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself." *Id*. at 71 (citations omitted). However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts.").

Plaintiff explicitly alleges in his Verified Complaint that "Lucus [sic] Miles and Richard Hayes, Sr., are liable unto [Plaintiff] in their individual/personal capacity pursuant to 42 United States Code Section 1983 of the Civil Rights Act." (Dkt. No. 1 at 8.) To the extent the Plaintiff brings his claims against the Defendants in their individual capacity, the Eleventh Amendment does not bar suit.

**Referral for Criminal Investigation**

Plaintiff requests the Court to refer "this complaint to the Federal Bureau of Investigations [sic] ('FBI') pursuant to 18 U.S.C. § 4." (Dkt. No. 1 at 9.) In his Response in Opposition to the Defendants' Motion for Summary Judgment, Plaintiff states that the "Court has the inherent power, and the implicit duty under 18 U.S.C. § 4, to refer Plaintiff's Complaint to the Federal Bureau of Investigations [sic], *upon declaring Defendants' conduct to violate*

*Plaintiff's Eighth Amendment to the United States Constitution [sic]*." (Dkt. No. 29 at 6 (emphasis added).)

The undersigned declines to address this issue because the Court has not "[declared] Defendants' conduct to violate Plaintiff's Eighth Amendment to the United States Constitution [sic]." (*Id.*) In any event, a private citizen does not have a "judicially cognizable interest in the prosecution or nonprosecution of another" person. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

**State Law Claims**

The Plaintiff alleges that the Defendants are liable "in their individual/personal capacity" for "assault and/or battery" under South Carolina law. (Dkt. No. 1 at 8.) According to South Carolina law, "'an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree.'" *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995) (quoting *Jones v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct. App. 1995)). In his Response to Defendants' Motion for Summary Judgment, Plaintiff contends that "Defendant Miles may have been authorized and justified in his initial application of force against the Plaintiff but Defendant Miles and Defendant Hayes were not authorized or justified in using unnecessary and/or excessive force against Plaintiff after Plaintiff became docile." (Dkt. No. 29 at 10-11.)

The South Carolina Tort Claims Act ("SCTCA"), § 15-78-10 *et seq.*, is "the exclusive remedy for any tort committed by an employee of a governmental entity." S.C. CODE ANN. § 15-78-70(a). "An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except . . . if it is proved that the employee's

13

conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. CODE ANN. § 15-78-70.

The Plaintiff argues that the SCTCA does not apply in this case because Plaintiff has alleged that the Defendants' conduct constituted actual malice or intent to harm. (Dkt. No. 29 at 7.) The Defendants argue that the SCTCA does apply because "Plaintiff never provides any evidence supporting the contention that either Defendant acted with actual malice or intent to harm" and because the Defendants were justified in their use of force against Plaintiff. (Dkt. No. 42 at 11-12.)

The Defendants primarily rely upon *McCoy v. City of Columbia*[7] in support of their contention that the SCTCA applies and prevents Plaintiff from suing the Defendants. In *McCoy*, the Court found that the SCTCA applied because "McCoy ha[d] not shown a genuine issue as to whether the Officer Defendants' conduct meets the exception in the SCTCA allowing employee liability."[8] 929 F.Supp.2d at 566. The Court in *McCoy* also reviewed the video of the incident and found that

> Although the Officer Defendants did push McCoy, they clearly did so to move McCoy away from the scene of McAlister's arrest. This was reasonable under the circumstances. Moreover, because probable cause supported McCoy's arrest, handcuffing him and taking him to jail was likewise reasonable. Therefore, neither the City nor the Officer Defendants are liable for assault and battery.

*Id*. at 567.

---

[7] 929 F.Supp.2d 541 (D.S.C. 2013).

[8] The plaintiff in *McCoy* "appear[ed] to . . . rely[] primarily on the allegations in his Amended Complaint, the incident report, the video of the arrest, and his own deposition testimony." *McCoy*, 929 F. Supp. 2d at 566. The court had already explained, however, that based on the video, the at-issue defendants had probable cause to arrest the plaintiff, and the court noted there was "no evidence that the Officer Defendants falsified the incident report or intentionally failed to timely submit required booking information to the detention center." *Id*. The court further stated,

> In his Response to the Officer Defendants' Motion for Summary Judgment, McCoy neither sets forth nor cites to any other record evidence in support of these allegations. Instead, he flatly states that, "in this particular set of facts," his evidence is sufficient. This is not so.

*Id*.

14

In the present case, unlike in *McCoy*, the Plaintiff has provided the Court with a Verified Complaint, multiple sworn affidavits, and detailed memoranda in opposition to the Defendants' Motion for Summary Judgment. The Plaintiff has sufficiently established that there is a genuine dispute of material fact as to the events which occurred after Defendant Miles initially discharged pepper spray onto Plaintiff's face.

"[A] law enforcement officer who uses reasonable force in effecting a lawful arrest is not liable for assault or battery. However, if the officer uses excessive force, or 'force greater than is reasonably necessary under the circumstances,' the officer may be liable for assault or battery." *McCoy*, 929 F.Supp.2d at 567 (quoting *Moody v. Ferguson*, 732 F.Supp. 627, 632 (D.S.C. 1989); citing *Roberts*, 902 F. Supp. at 671). The critical inquiry is not whether the Defendants' actions in initially using force against Plaintiff constitute assault and battery; rather, the critical inquiry is whether the Defendants' actions *after* Plaintiff was initially sprayed with pepper spray constitute assault and battery.

The undersigned is unable to conclude that the SCTCA prevents Plaintiff from maintaining a claim against the Defendants for assault and battery.[9] The SCTCA does not apply "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. CODE ANN. § 15-78-70(b). The evidence presented by Plaintiff, when viewed in the light most favorable to him, clearly supports an inference that Defendants acted with actual malice or an intent to harm Plaintiff. Thus, the Defendants' Motion for Summary Judgment should be denied as to Plaintiff's state law claims.

---

[9] Defendants originally argued that Plaintiff's state law claims were barred by the statute of limitations. (Dkt. No. 24-1 at 16-17.) That argument has since been withdrawn. (*See* Dkt. No. 32 at 4 of 7.)

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 24) be DENIED.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 13, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).